UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA

v.

LINDA WARDLOW

Case No. 2:19-CR-20254

ORDER ON MOTION FOR
SENTENCE REDUCTION UNDER
18 U.S.C. § 3582(c)(1)(A)

(COMPASSIONATE RELEASE)

Upon motion of ☑ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☑ GRANTED

☑ The defendant's previously imposed sentence of imprisonment of _____6 MONTHS_____ is reduced to _____TIME SERVED_____. If this sentence is less than the amount of time the defendant already served, the sentence is reduced to a time served; or

    ☑ Time served.

    If the defendant's sentence is reduced to time served:

        ☐    This order is stayed for up to fourteen days, for the verification of the defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release. The defendant shall be released as soon as a residence is verified,

a release plan is established, appropriate travel arrangements are made, and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, the parties shall immediately notify the court and show cause why the stay should be extended; or

☑ There being a verified residence and an appropriate release plan in place, this order is stayed for up to fourteen days to make appropriate travel arrangements and to ensure the defendant's safe release. The defendant shall be released as soon as appropriate travel arrangements are made and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, then the parties shall immediately notify the court and show cause why the stay should be extended.

☐ The defendant must provide the complete address where the defendant will reside upon release to the probation office in the district where they will be released because it was not included in the motion for sentence reduction.

☐ Under 18 U.S.C. § 3582(c)(1)(A), the defendant is ordered to serve a "special term" of ☐ probation or ☐ supervised release of _____ months (not to exceed the unserved portion of the original term of imprisonment).

☐ The defendant's previously imposed conditions of supervised release apply to the "special term" of supervision; or

☐ The conditions of the "special term" of supervision are as follows:

☐ The defendant's previously imposed conditions of supervised release are unchanged.

☒ The defendant's previously imposed conditions of supervised release are modified as follows:

The defendant shall participate in the Location Monitoring Program for 60 consecutive days and abide by all the requirements of the program. Technology at the discretion of the probation office. Home Detention: The defendant is restricted to his/her residence at all times, with the exception of: employment, education, religious services, medical, substance abuse or mental health treatment, attorney visits, court appearances, court-ordered obligations, or, other activities as approved in advance by the probation officer. As directed by the Court, the defendant shall pay all or part of the cost of the program based upon their ability to pay.

☐ DEFERRED pending supplemental briefing and/or a hearing. The court DIRECTS the United States Attorney to file a response on or before _____, along with all Bureau of Prisons records (medical, institutional, administrative) relevant to this motion.

☐ DENIED after complete review of the motion on the merits.

☒ FACTORS CONSIDERED (Optional)
See addendum.

☐ DENIED WITHOUT PREJUDICE because the defendant has not exhausted all administrative remedies as required in 18 U.S.C. § 3582(c)(1)(A), nor have 30 days lapsed since receipt of the defendant's request by the warden of the defendant's facility.

    IT IS SO ORDERED.

:

                                                  s/Terrence G. Berg
                                                  UNITED STATES DISTRICT JUDGE

Dated: April 28, 2021

In determining whether Linda Wardlow is eligible for compassionate release under 18 U.S.C. § 3582(c), the Court must determine (1) whether she has exhausted her administrative remedies, (2) whether there are "extraordinary and compelling reasons" that warrant her release, and (3) whether her release would be consistent with the factors set forth in § 3553(a). The government concedes that Wardlow has exhausted her administrative remedies. ECF No. 22, PageID.141-42.

The government also indicates that Wardlow's heightened risk of severe complications from COVID-19 constitutes an "extraordinary" reason for her release. ECF No. 22, PageID.138. She states that she has emphysema, which is an underlying airway disease, as well as shortness of breath, and high blood pressure. ECF No. 18, PageID.104. She is also 70 years old. *Id*. The government argues, however, that her circumstances are not "compelling," and therefore cannot justify compassionate release. The Court disagrees. Wardlow has presented sufficient evidence of "extraordinary and compelling reasons" that would justify her early release. The Court will address each of the government's arguments in turn.[1]

---

[1] As a preliminary matter, the Court notes that the government draws a distinction between the terms "extraordinary" and "compelling," suggesting that a defendant must make two separate showings to satisfy the statute in presenting reasons for release. The statutory language directs Courts to determine whether "extraordinary and compelling reasons" exist such that release is warranted. The Sixth

The government first argues that Wardlow's lung disease is not a compelling reason because she is incarcerated at a federal medical center and the severity of her symptoms is controlled by medication. ECF No. 22, PageID.154-55. Essentially, the government argues that she has access to sufficient medical care and therefore does not face a significant risk of adverse outcomes due to her disease.

But the government's argument ignores the magnified risk that Wardlow faces due to COVID-19: if she were to contract this disease, the mitigating effects of medication or the fact that she is in a federal medical center cannot change the fact that her comorbidities are severe and heighten her risk of serious illness or death. Specifically, Wardlow's emphysema and high blood pressure place her in a much higher risk category than healthy adults of her age. Adults of any age "are at increased risk" of severe illness from COVID-19 if they suffer from chronic obstructive pulmonary disease, which includes emphysema. *See*

---

Circuit has indicated that courts are not bound to any particular categories of information in making that determination. *United States v. Elias*, 984 F.3d 516, 519-20 (6th Cir. 2021). But the Court finds no Sixth Circuit case interpreting 18 U.S.C. § 3582(c)(1)(A)(i)'s "extraordinary and compelling reasons" to mean that a particular reason may be considered "extraordinary" but not necessarily "compelling" and that in the absence of meeting both standards, an individual presenting merely extraordinary reasons would not meet the statute's criteria. Rather than mince words, the Court construes the government's position to be that Wardlow cannot show "extraordinary and compelling reasons" as required under this provision.

Centers for Disease Control, People with Certain Medical Conditions (March 22, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#copd. Indeed, "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *Id*.

In addition, adults over the age of 65 years are at further risk of severe illness from COVID-19. *See* Centers of Disease Control, COVID-19 Guidance for Older Adults (March 22, 2021), https://www.cdc.gov/aging/covid19-guidance.html; *see also* Centers for Disease Control, Increased Risk of Hospitalization or Death (March 22, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html ("[P]eople in their 60s or 70s are, in general at higher risk for severe illness than people in their 50s."). Indeed, "8 out of 10 COVID-19 deaths reported in the U.S. have been in adults 65 years and older." *Id*. Even while symptoms of her lung disease are abated by medication, she still experiences difficulty breathing and shortness of breath. ECF No. 18, PageID.120. Wardlow struggles to sleep, and even then, she will "wake up fighting for air," with pain in her lungs and chest area. *Id*. If Wardlow's health is this severely affected by these diseases now, adding COVID-19 to the mix seems likely to result in an untenable situation no matter the care available to her. The Court finds that Wardlow's age, emphysema, and high blood pressure together

3

constitute a circumstance that is "extraordinary and compelling" in light of the COVID-19 threat.

Second, the government argues that the conditions at FMC Lexington, where Wardlow is presently incarcerated, weigh against granting early release. ECF No. 22, PageID.155. In particular, the government points to the fact that Wardlow received the first dose of the Moderna COVID-19 vaccine on February 19, 2021 and that she has likely received her second dose as of this writing. *Id*.

However, there is a growing body of evidence that COVID-19 variants from the United Kingdom, South Africa, and Brazil are circulating in the United States in greater numbers. *See* Centers for Disease Control, About Variants of the Virus that Causes COVID-19 (March 22, 2021), https://www.cdc.gov/coronavirus/2019-ncov/transmission/variant.html.

Although no vaccine provides absolute immunity, it is as yet not fully known whether the present vaccines provide the same level of protection as with previous variants. *Id*. This means that Wardlow could still become infected with a newer variant of COVID-19 and experience severe symptoms, despite the fact she has been vaccinated. *See id*.

What is clear is that these variants spread more easily and quickly than past variants. *Id*. Some evidence also suggests that these new variants "may be associated with an increased risk of death compared to

other variant viruses." *See id*. It is true that FMC Lexington currently reports no inmates and no staff who have tested positive for COVID-19. *See* Pandemic Response Oversight, Dashboards of BOP COVID-19 Cases (April 28, 2021). https://www.bop.gov/coronavirus/. Yet just a few months ago, FMC Lexington reported over "300 active Covid-19 cases among inmates and staff." ECF No. 22, PageID.155. In addition, the facility has reported 9 inmate deaths. Based on the proliferation of new variants that may be resistant to vaccines, spread more easily and quickly, coupled with the previous trends in infection rates at the facility, the number of infections can rapidly change at FMC Lexington. The Court thus finds that despite Wardlow's having likely received both doses of the Moderna vaccine, in considering the increased mitigation efforts at FMC Lexington, Wardlow's age, specific medical conditions, and all the unique circumstances of her case nevertheless provide "extraordinary and compelling" reasons given the current uncertain state of variant spread and the possibility of another outbreak in the facility.

The factors under § 3553(a), considered as a whole, also counsel in favor of granting Wardlow's motion. Regarding the nature and circumstances of the offense, Wardlow's offense conduct was quite serious, involving a scheme to defraud the Social Security Administration that endured for over 20 years and allowed her to receive hundreds of thousands of dollars in undeserved benefits. Nevertheless, the offense

5

was a non-violent offense, and Wardlow has already served nearly two-thirds of her six-month term. *See* ECF No. 18, PageID.104. The government notes that the offense is one for which an "extraordinarily small number of…defendants" have actually been sentenced to prison time in this District. ECF No. 22, PageId.137. Thus, there is less of a concern that granting Wardlow release leads to an unwarranted sentencing disparity.

As to the goals of deterrence and protecting the public from further crimes, the Court finds that having served nearly four months in prison during the difficult circumstances of the pandemic has been a significant deterrent and has provided a punishment that adequately protects the public. The Court notes that after Wardlow's report date was "adjourned once by unopposed motion and twice by stipulation and order," she voluntarily admitted herself to FMC Lexington on January 2, 2021. ECF No. 22, PageID.137-38. She did so even after FMC Lexington reported over "300 active Covid-19 cases among inmates and staff" just days prior, on December 31, 2020. ECF No. 22, PageID.155. In other words, Wardlow willingly entered a prison experiencing a severe COVID-19 outbreak even though she could have postponed her period of incarceration, and

despite her heightened medical risks, and the lack of any assurance that she would promptly receive a vaccine.[2]

Moreover, the emotional toll and stress that Wardlow has been subjected to as a result of her impending, yet repeatedly delayed, imprisonment cannot be understated. The surrounding context of her incarceration thus far suggests that Wardlow has served a sufficient punishment. At the time that the Court sentenced Wardlow to six-months of prison time on January 16, 2020, it was with the expectation that she would serve that time under normal circumstances. Less than a week later, however, the Center for Disease Control launched its agency-wide response to the COVID-19 pandemic. *See* Centers for Disease Control, CDC's Response (March 22, 2021), https://www.cdc.gov/coronavirus/2019-ncov/cdcresponse/index.html. Since then, Wardlow's period of incarceration was repeatedly put off in the interest of public health and safety. Nevertheless, while she waited, the knowledge of impending imprisonment in a pandemic in which it became evident from the start that individuals with advanced age were highly susceptible to its most severe and fatal effects leaves little doubt

---

[2] Although the Court notes warily that Wardlow filed for compassionate release only days after arriving to begin serving her sentence, it would be a risky stratagem indeed for an attorney to advise a client to expose herself to a high risk of severe illness or death, on the chance that doing so might make her eligible for a sentence reduction. Without specific evidence that this is what took place here, the Court cannot give credence to such a contention.

7

that Wardlow endured the pandemic in a state of considerable apprehension. The stress and toll were so severe that, despite offers from the government for yet another adjournment, Wardlow went head on into a facility being ravaged by COVID-19. She has now served nearly 4 months, or nearly two-thirds, of her term under incarceration conditions harsher and more restrictive than during normal times. On balance, Wardlow's ordeal and subsequent sentence served thus far satisfies the need to promote respect for the law and provide just punishment.

Accordingly, the Court finds that Wardlow is entitled to have her sentence reduced to time-served and must therefore be released. As a condition of supervised release, however, the Court orders that Wardlow remain on home confinement, according to conditions as recommended by the Probation Department, for a period of 60 days.